**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TENA MARIE MANNY,** | : | **Civil No. 4:15-CV-615** |
| | : | |
| **Plaintiff,** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN,** | : | |
| **Commissioner of the** | : | |
| **Social Security Administration** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case calls upon us to consider a narrow factual question:  Did a Social Security Administrative Law Judge (ALJ) err when he determined that the plaintiff did not demonstrate that her chronic renal disease was wholly disabling during a one month period from December1 through December 31, 2011?  Furthermore, we are asked to consider one primary legal issue with respect to the plaintiff's medical condition at this time, since the plaintiff's principal argument on appeal is that her kidney disease had progressed to a point by December 2011 where her ailment exceeded or equaled the conditions that are *per se* disabling at Step 3 of the five step analytical process used to evaluate disability claims.  We are also admonished that we

must undertake this narrow and specific review against a deferential standard of review, one which is limited to addressing the question of whether the findings of the ALJ are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).

While the circumstances of Ms. Manny's chronic and progressive renal disease evoke great sympathy, since it appears that several years after the period encompassed by this disability application her illness progressed to the point where she now requires kidney dialysis, when we consider the evidence that existed in 2011 relating to her medical condition during this one month period we are constrained to conclude that substantial evidence supported the ALJ's decision denying benefits to the plaintiff.  Therefore, for the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## II.   BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Tena Marie Manny, is an individual who was in her 40's at the time of the alleged onset of her disability, and thus was defined as a "younger individual" under the Social Security regulations.  See 20 C.F.R. § 404.1563(c) (defining a younger person as one who is under age 50 and, generally, whose age will

not seriously affect his ability to adjust to other work).  Manny had completed the

11th grade in high school, and had experienced difficulties reading throughout her

life, but had previously worked in a number of industrial setting between 1998 and

2006.  (Tr., 25, 31, 36, 37.)

Manny suffers from chronic kidney disease, and her claim of disability rested

upon this progressive, chronic renal disease.  Manny initially alleged that she could

no longer work due to her impairment as of August 1, 2006, but she later amended

that date of the onset of disability to December 1, 2011 (Tr. 45, 50).  Manny's date

last insured was December 31, 2011 (Tr. 50).  Therefore, an assessment of Manny's

disability claim in this appeal is limited to examining the medical record pertaining

to the plaintiff for the period from December 1 through December 31, 2011.

With respect to this narrow and fixed time frame, in order to qualify for Social

Security Disability benefits at Step 3 of the five-step sequential process mandated by

law, Manny was required to show, in part, that her renal disease had resulted in:  "at

least three hospitalizations within a consecutive 12–month period and occurring at

least 30 days apart.  Each hospitalization must last at least 48 hours, including hours

in a hospital emergency department immediately before the hospitalization."  20

C.F.R. § Pt. 404, Subpt. P, App. 1, §6.09.  Here, Manny's medical records reveal on-

going treatment for progressive kidney disease but do not meet this exacting standard.

3

Those records show that on April 26, 2011, Manny was referred to Michael Schultz, M.D. for a renal transplant evaluation and an assessment of her renal disease. (Tr. 300).  In this assessment, Dr. Schultz noted that Manny had experienced kidney and bladder infections since she was a child and currently had frequent urinary tract infections.  (Id.)  However, Manny was not on dialysis in 2011 and had no previous transplants.  (Id.)  Furthermore, Manny was a not an apt transplant candidate in April of 2011, because she was a heavy smoker, having reported that she smoked one pack of cigarettes per day.  (Id.)

Upon an examination, Manny had normal strength, coordination, and sensation with no rashes, abdominal pain, nausea, vomiting, diarrhea, chest pain, aches, or fever; (Tr. 300-01) looked "quite well;" and was not in acute distress.  (Tr. 301). After evaluating Manny, Dr. Schultz considered her to be a fair to good transplant candidate and some date in the future, except that she had to quit smoking before being considered for a kidney transplant. (Tr. 302, 340.) Dr. Schultz also ascertained that, because Manny's glomerular filtration rate (GFR) was not less than 20, she did not meet the criteria to be eligible for a transplant in April 2011.  (Tr.309.)  A glomerular filtration rate, or GFR, is a measure of how well one's kidneys are filtering.  A GFR of 60 or higher is in the normal range.  A GFR below 60 indicates a patient may have kidney disease, and a GFR of 15 or lower indicating kidney failure

requiring dialysis or transplant.  In the Spring of 2011, Manny's lowest recorded GFR at that time was 25 (Tr. 310.)  In July of 2011, Manny's GFR was recorded at 23 (Tr. 393.)

In 2011, Manny's regular attending physician was George Dy, M.D.  On August 24, 2011, Dr. Dy treated Manny for unspecified chest pain.  At that time an EKG was normal, and cardiac testing showed no abnormalities.  (Tr. 435-36.)  On August 29, 2011, Manny complained to Dr. Dy of headaches and dizziness, (Tr. 432), however, cardiac, spinal, and extremities tests conducted by the doctor were all normal.  (Tr. 433)  On September 2, 2011, Dr. Dy saw Manny and reported that she appeared well with normal cardiac, spinal, and extremities testing. (Tr. 430.) Twenty days later, on September 22, 2011, Dr. Dy completed a medical source statement relating to Manny in which he opined that Manny could occasionally lift and carry up to 25 pounds, frequently lift two to three pounds and frequently carry ten pounds. (Tr. 413.)  Dr. Dy further stated that Manny could stand and walk for three hours in an eight- hour workday, sit for eight hours in an eight-hour workday, and she had no limit on her ability to push or pull.  (Tr. 413)  Dr. Dy further opined that Manny could occasionally bend, kneel, crouch, and balance, but never stoop or climb.  (Tr. 414.) He reported that she had no other limitations.  (Tr. 414.)  None of these findings described Manny as disabled.

5

On September 28, 2011, Manny was treated for atypical chest pain. (Tr. 552-53.) At that time, she was in mild distress, but she was alert, fully oriented, and well-nourished. (Tr. 553.) Her cardiac testing was normal; her back and respiratory systems were normal; her extremities exhibited a normal range of motion; and she had no motor deficit. (Tr. 553.) Manny improved and was discharged in stable condition. (Tr. 557.) An echocardiography report from the following day indicated largely normal results. (Tr. 639.) Manny returned to the hospital two weeks later, on October 9, 2011, complaining of shortness of breath, dizziness, and tingling lips. (Tr. 665.) However, her symptoms improved once she was admitted to a hospital, and her physical examination was essentially normal with full extremity range of motion, no motor or sensory deficits, and normal back and respiratory results. (Tr. 666.) An EKG, chest x-ray, and CT of her head were all normal. (Tr. 666.)

On November 14, 2011, as part of the administrative review of Manny's disability claim, Minda Bermudez, M.D., reviewed Manny's medical records during the relevant period and issued a residual functional capacity (RFC) assessment that considered whether Manny met or equaled a listing level impairment related to her chronic renal failure. (Tr. 56-58.) Dr. Bermudez found that Manny's illness did not meet or equal this listed impairment and instead concluded that Manny was capable of occasionally lifting/carrying up to 20 pounds, frequently lifting/carrying up to ten

pounds, standing and/or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. (Tr. 57.) Dr. Bermudez further opined that Manny had no limitations pushing or pulling, could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, and crawl, and frequently stoop/bend, kneel, and crouch; (Tr. 57) and found that she experienced no manipulative, visual, or communicative limitations, but concluded that she should avoid concentrated exposure to vibrations and hazards such as machinery and heights. (Tr. 57-58.)  These medical findings were later confirmed by another consulting expert upon a medical records review.  On April 17, 2012, Michael Perll, M.D., reviewed Manny's medical records, including new evidence not before Dr. Bermudez, and agreed with Dr. Bermudez's RFC analysis. (Tr. 688.)

On December 13, 2011, Manny had a fistula inserted into her right forearm. (Tr. 756.)  Manny was able to use her hand following this procedure and had no motor deficits or loss of sensation in her right hand. (Id.)

Following her date last insured, December 31, 2011, Manny continued to receive treatment for her kidney disease and other ailments.  Thus, on January 11, 2012, Manny again sought treatment for unspecified chest pain. (Tr. 701.)  At this time, Dr. Dy summarized Manny's treatment history, noting that she had prior hospital admissions due to chest pain complaints, which were associated with

uncontrolled hypertension.   (Tr. 701.)   An echocardiogram and stress test was unremarkable for coronary artery disease, and Dr. Dy noted that Manny's GFR was stable at 29, indicating kidney disease, but not renal failure.  (Tr. 701.)  Moreover, as of October 2012, Manny had not undergone any dialysis treatments.  (Tr. 760.)

On June 20, 2013, Manny, who was represented by counsel, had an administrative hearing on her disability application before an ALJ, during which she and a vocational expert (VE) testified.  (Tr. 21-49.)  Manny's testimony confirmed the chronic, but not acute, nature of her renal disease as of her date last insured, December 2011.  During her testimony, Manny stated that she had chronic kidney disease and hypertension, but that she was not receiving any dialysis treatments at that time.  (Tr. 27.)  According to Manny, as of June 2013, she expected to receive dialysis at some point in the future (Tr. 27.) and, she was now on a kidney transplant list.  (Tr. 28.)  Manny explained that she experienced symptoms related to her kidney disease including not being able to use the bathroom fully, getting bladder infections, experiencing lower back pain, and stomach sickness.  (Tr. 28, 30.)  According to Manny, prior to her date last insured in December 2011, she got bladder infections about every two months, (Tr. 30, 43.), but she had no problem walking, standing, or sitting, and had no problems with her arms or hands including, no problem pushing or pulling with her arms or hands, no problem squatting, bending, climbing, picking

8

up small objects, using zippers and buttons, or being bothered by winter weather.  (Tr. 38-39.)  Manny also testified that, as part of her activities of daily living, she is able to clean her home, cook, do laundry, make beds, and sweep.  (Tr. 33-35.)  In addition, she also occasionally went shopping, visited friends, drove a car up to 40 miles per week, bathed and dressed herself, and could lift up to 20 pounds.  (Tr. 34-37.)

Based upon this information, the vocational expert testified that during the period of her disability claim, Manny was capable of performing some assembly jobs which existed in significant numbers in the national and regional economy.  (Tr. 47-48.)

On July 9, 2013, the ALJ issued an opinion in Manny's case denying her disability application.  (Tr. 9-16.)  In this opinion, the ALJ defined the period of disability for Manny as extending from her claimed date of onset, December 1, 2011, to her date last insured, December 31, 2011, a one month time frame.  During this fixed and finite time frame, the ALJ found at Step 2 of the analytical process that Manny suffered from the following severe impairments:  Chronic kidney disease and hypertension.  (Tr. 11.)  The ALJ concluded at Step 3 of the evaluative process that Manny's kidney disease, while severe, did not satisfy all of the *per se* disabling qualifications prescribed by 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §6.09, criteria which included "at least three hospitalizations within a consecutive 12–month period

and occurring at least 30 days apart.  Each hospitalization must last at least 48 hours,
including hours in a hospital emergency department immediately before the
hospitalization."

The ALJ then went on to determine that Manny retained the residual capacity
in December 2011 to do some work.  (Tr. 11-16.)  In reaching that conclusion the
ALJ crafted a residual functional capacity consistent with the medical restrictions
identified by the doctors who had examined Manny's case and observed that:  "the
record does not contain any opinions from treating or examining physicians
indicating that the claimant is disabled or even has limitations greater than those
determined in this decision."  (Tr. 15.)  Having concluded that Manny had retained
the residual functional capacity to perform some work, the ALJ denied this
application.  (Tr. 16.)

This appeal followed. (Doc.1.) On appeal, Manny's principal argument is that
the ALJ erred in failing to find that she met or exceeded the *per se* disabling
limitations prescribed for chronic renal disease by  20 C.F.R. § Pt. 404, Subpt. P,
App. 1, §6.09 in December 2011.  Manny makes this claim even though she seems
to acknowledge that one of the prerequisites required to meet this listing–at least three
hospitalizations within a consecutive 12–month period and occurring at least 30 days
apart with each hospitalization lasting at least 48 hours– is not satisfied here.  Manny

also alleges that the ALJ failed to fully develop the medical record in support of her narrow, one-month claim of disability.  Manny advances this argument even though, as the ALJ noted:  "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."  (Tr. 15.)

Having carefully reviewed these arguments, for the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

### III.   DISCUSSION

#### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THE ALJ AND THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a

preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that

the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §§404.1512, 416.912; Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that

are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### B. Step Three Analysis

At Step 3 of this evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth

by the social security regulations, and case law.  First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se*, and is awarded benefits.  20 C.F.R. §416.920(d); <u>Burnett</u>, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment."  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d).  An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient.  <u>Id.</u>

The determination of whether a claimant meets or equals a listing is a medical one.  To be found disabled under step three a claimant must present medical evidence or a medical opinion that his or her impairment meets or equals a listing.  An administrative law judge is not required to accept a physician's opinion when that opinion is not supported by the objective medical evidence (raw data) in the record. <u>Maddox v. Heckler</u>, 619 F. Supp.  930, 935-936 (D.C.Okl. 1984); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, §3:22 (2014), *available at* Westlaw SSFEDCT.  However, it is the responsibility of the ALJ to identify the relevant listed impairments, because it is "the

16

ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Burnett, 220 F.3d at 120 n.2.

### C.   The ALJ Correctly Concluded that Manny Had Not Satisfied the Chronic Renal Disease Listing in December 2011

On appeal, Manny's primary argument is that the ALJ erred in failing to find that she met or exceeded the *per se* disabling limitations prescribed for chronic renal disease by 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §6.09 in December 2011. Manny makes this claim even though she seems to acknowledge that one of the prerequisites required to meet this listing–at least three hospitalizations within a consecutive 12–month period and occurring at least 30 days apart with each hospitalization lasting at least 48 hours– is not satisfied here.

Manny faces a compelling and precise burden of proof in making this argument. Given the exacting legal standards which apply to review of any Step 3 analysis of an ALJ decision denying an application for disability benefits, we conclude that the ALJ did not err in denying Manny's application at Step 3 of this sequential analysis process. In order for Manny to qualify for benefits at Step 3 based upon her renal disease it was incumbent upon Manny to show that she met *all* of the requirements of this listing in December 2011 since an impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not

17

sufficient.   Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d).

For renal disease one of these mandatory listing requirements is that the claimant

undergo "at least three hospitalizations within a consecutive 12–month period and

occurring at least 30 days apart.  Each hospitalization must last at least 48 hours,

including hours in a hospital emergency department immediately before the

hospitalization. "  20 C.F.R. § Pt. 404, Subpt. P, App. 1, §6.09.

In this case, the evidence before the ALJ, and this Court, reveals that Manny

suffered from serious, on-going and progressive renal disease, but it is undisputed

that this particular hospitalization requirement was not satisfied by December 2011.

Given this immutable fact, the ALJ and this Court are both constrained to conclude

that Manny did not meet the listing requirement at Step 3.  Therefore, the ALJ was

compelled to deny this application at Step 3, and we are required to affirm that

decision, which is consistent with the evidence in this case.

## D.   The Factual Record Was Adequately Developed in this Case

In addition, Manny also alleges that the ALJ failed to fully develop the medical

record in support of her narrow, one-month claim of disability in December 2011.

Manny advances this argument even though, as the ALJ noted: "the record does not

contain any opinions from treating or examining physicians indicating that the

claimant is disabled or even has limitations greater than those determined in this

decision." (Tr. 15.)  This argument merits only brief consideration on appeal.  While the ALJ has a duty to ensure that the record is both fair and adequate, the nature of that duty is limited, and the principal responsibility for proving a claimant's case lies with the claimant and her counsel.  Indeed, it has been aptly observed that, in this regard, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." <u>Money v. Barnhart</u>, 91 F. App'x. 210, 215 (3d Cir.2004).  In contrast, the ALJ's responsibility here is much more limited.  The ALJ's "only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." <u>Id</u>. <u>See</u> <u>Houlihan v. Astrue</u>, No. 3:10-CV-641, 2010 WL 5563901, at *12 (M.D. Pa. Dec. 1, 2010), <u>report and recommendation adopted</u>, No. 3:CV 10 641, 2011 WL 94415 (M.D. Pa. Jan. 11, 2011).

Here, we find that the ALJ "ensure[d] that the claimant's complete medical history [wa]s developed on the record before finding that the claimant [wa]s not disabled." <u>Id</u>.  As part of this process, the ALJ received and considered three separate medical opinions and carefully assessed Manny's activities of daily living.  The ALJ then fashioned a residual functional capacity determination which fully accounted for Manny's medically identified limitations, noting that:  "the record does not contain

any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 15.)  Given that the ALJ's decision was entirely consistent with three separate medical evaluations, and did not impose limitations beyond those recognized by these three medical sources, it cannot be said that the ALJ erred when adopting a residual functional assessment that was consistent with these unanimous medical opinions. Nor can the ALJ be faulted for not further developing the factual record in this case. That record contained three consistent, congruent medical opinions.  Given the body of evidence before the ALJ, none of which found Manny to be wholly disabled, it is clear that the ALJ "ensure[d] that the claimant's complete medical history [wa]s developed on the record before finding that the claimant [wa]s not disabled."  Id. Nothing more is required of an ALJ under the law.

Thus, while the progression of Manny's chronic renal disease evokes great sympathy, the law and the facts reveal that there was no error by the ALJ in his determination that Manny did not meet the stringent requirements for a finding a disability during the limited, one-month period in December 2011 that was under consideration in this case.  Therefore, the decision of the Commissioner, which is supported by substantial evidence in the record of this case, should be affirmed on appeal.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted, and the Commissioner's decision be upheld.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of August 2016.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge